The government does not dispute that Thomas Powell's conduct in this case was egregious and unlawful. Indeed, the government prosecuted him, secured a conviction, and a sentence of imprisonment. The question here is therefore not whether any of his conduct should be condoned. Rather, the question is whether the Federal Tort Claims Act permits the plaintiffs to recover the damages they seek. There are three specific points that I'd like to address here this morning. First, whether the district court adhered to this court's prior ruling that the plaintiffs could proceed on claims of injury distinct from that caused by the unlawful touching. Second, and related, whether Howe's consent to be subject to an unlawful solicitation as part of a sting operation bars a claim based on that solicitation. And third, whether the district court erred in assessing attorney's fees against the government. Turning to the first issue, this court held in its first appeal that the plaintiffs could proceed with claims based solely on emotional distress suffered as a result of the demand for sexual favors or money. The court thus distinguished between injuries resulting from the solicitation and injuries resulting from the battery, and made clear that only the former, if proven, could support recovery consistent with the FTCA's limited waiver of sovereign immunity. The plaintiffs and the district court both disregarded this distinction on remand. I don't think so. You disregarded battery from intentional inflection? Yes, I think that the court did not separate out the harm that- You specifically talked about it. I think that the district court did not specifically separate out the harms that resulted from the separate torts, and take care to award damages based only on the harm that resulted from the solicitation. That's not how I read your decision, but go ahead. Well, I would like to draw the court's attention to several aspects of the court's opinion. First, the district court said that Powell caused emotional- his conduct caused emotional distress, and this conduct was not limited to touching, but also includes the abuse of authority, making clear that both forms of conduct resulted in- No, she was saying, I think I read her as saying, yes, there was physical touching, but there was also his conduct, and that's outside, that's the battery, but there's intentional inflection, emotional distress from Floyd and from his conduct. His conduct was everything that he did. The conduct was everything, and the district court, when it made the finding that the plaintiff had suffered emotional distress, she cited specifically two factual findings that were only about the touching. That's in her decision on ER 30. She cited paragraphs 15, 37, and 42 to support her finding that there had been emotional distress. Those paragraphs were only about the touching. So what we have here is a failure to keep separate emotional distress that resulted from the solicitation from emotional distress that resulted from- I'm sorry, what were you referring to just now? The district court's opinion on ER 30 makes a- Paragraph. I apologize, I did not- This is paragraph 66. Plaintiff suffered severe emotional distress. See findings of fact, and it cites several. Cites a whole bunch. There are several. Three of those deal only with the touching. So I think the district court is pretty clearly making a finding that severe emotional distress resulted from the touching, and it did not disaggregate that emotional distress from whatever- Does the emotional distress suffered as a result of the demand for sexual favors is an inquiry, is an injury distinct from the battery? Yes, so to the extent there is emotional distress caused by the solicitation, it would be a distinct injury. What I think we have here is that the court did not separate- Well, I think you're running uphill with regard to this argument. I mean, you've got a trial before a pretty highly experienced district judge who explicitly recognized on the record the scope of the remand and the fact that the battery is distinct from the intentional infliction of emotional distress claim, so you can spend more time talking about that if you want, or what I would like you to move to is to talk about the finding that the government litigated in bad faith. Certainly. We've laid out our arguments on the first point in our brief, and I'm happy to rest there. I would at some point like to address the issue of consent, but we can turn to bad faith first. So this court has made clear in several of its cases that awards of bad faith fees against the government are available only in exceptional cases and for dominating reasons of justice, and bad faith means a conscious doing of a wrong because of dishonest purpose or moral obliquity. There just aren't any findings in this case here that would support an award of bad faith because there is no evidence or findings that any of the government conduct pointed to was motivated by dishonest purpose or moral obliquity. Well, the court found fault with the government's argument regarding consent by participating in the sting. Did the court accurately characterize the government's argument post-remand? Yes, the government did argue that plaintiff Howe's consent to participate in the sting operation necessarily included consent to be subject to solicitation and therefore barred damage based on that. And you want to repeat that argument even here? Yes, the government's position is that this is well established as a matter of state law that consent is a bar to an intentional tort. So what she did was cooperate with the government, reported to the government, agreed to participate in the sting, was assured that she wouldn't be touched, she got in fact, it didn't live up to their part of the bargain. And you're saying, oh well, she consented to that by agreeing to cooperate with the government. Well, so I think we have to be... You don't think that's an outrageous argument? No, no, I think we have to be clear on what's at issue here. She consented to participate in the sting operation. She participated to wear a wire and be videotaped, that's what she consented to. Her own testimony was that she consented to help the government that went beyond just physically wearing a wire, including handing money over in the second meeting. Okay, so she consented to sexual assault, that's what she said, that's what you're arguing. Whether she consented to being touched is not relevant to whether she consented to the basis of her claim here, which is the solicitation. So we do think it's clear that she consented to be the subject of a solicitation, which is the point of the investigation. Her claim is not based on the touching, so this court doesn't need to find that she consented to the touching in order to have her claim based on the solicitation be barred by consent. So she consented to be further subjected to these inappropriate solicitations to cooperate with the government instead of just not going through with it. Did the government say, this guy's a bad guy and you shouldn't even be in the room with him? Well, she knew that. No, did the government say that? Well, I think the government made clear that they were investigating him for improper conduct. The government was investigating and you had a cooperating witness. Yes. Okay, and you're saying that the cooperating witness, by agreeing to participate with the government, goes in knowing she'll be subjected to this, likely be subjected to this objectionable behavior. That then can't sue for... Can't go in for cooperating, can't recover for agreeing to cooperate. Because we think the consequences would be very significant for law enforcement operations. I mean, this is a fairly common procedure to use cooperating witnesses in this way and have their interactions recorded. If every one of those witnesses could then turn around and sue the government for being subject to the conduct that the investigation was designed to elicit, that would have a very significant chilling effect on law enforcement operations and could make undercover operations cost prohibitive. So we think that demonstrates why this, at the very least, is not a bad faith argument. It has support in the law. It has some factual basis. Looking at this court's fees decision in Rodriguez, this court said where there is some factual basis for an argument, the argument is not made in... Did you argue what portion of the recovery could not be the basis for... Did you separate the amounts? How did you determine when she could be compensated for the solicitation and when she couldn't? That solicitation was not the only solicitation. Well, for a plaintiff, how it was, the only solicitation occurred in the course of the undercover operation. Just as the only injury she suffered was the time she served as a witness? That's right. That's right. Her other meeting with Powell was in the offices of the asylum offices, and she testified that there was no... She did not suffer any emotional distress from that meeting, and there's no allegation that there was an improper solicitation at that meeting. At any other time, her sole claim for emotional distress is from the time she served as a confidential informant? Yes, that's absolutely correct. That's what the argument is based on, that it could be a different situation had she been exposed to conduct first and then consented, but she didn't here. I see that I have three minutes left, and I would like to reserve the rest of my time. Thank you. May it please the Court, James D. Simone on behalf of Zhe Hao and Zhui Liu. I'd like to go to the very last point the counsel was making that Judge Reinhart was inquiring, because it is a misstatement on finding of fact 30, which is found in the excerpt of the record 25. Ms. Hao testified that she suffered severe emotional distress when she was first contacted by Thomas Powell on the telephone. This was prior to letting her attorney know. This came out of the blue for her. This was prior to engaging in a sting operation, and Judge Marshall properly made a finding of fact in 31 that after that phone call, I'm sorry, that's still in 30, after her first phone conversation with Powell, Hao experienced anxiety, headaches, sleeplessness, and fear. So the assertion that there was no harm prior to the sting operation, as made by counsel for the United States, is just absolutely belied and proven wrong by the record, and I thought I would start out with that. In terms of this parade of horrors that if someone cooperated with the government, then they could turn around and sue when they were involved in a sting operation, this is a very unique situation. This is a situation in which the sting operation is against an official acting in his course and scope of employment with the United States of America. Your normal crime is not going to be against a government official such that you're going to have liability against the United States based on that conduct of government officials. So in terms of sticking with the facts of this case, Ms. Zhe Hao should be compensated because as she testified in trial in front of Judge Marshall, she was present there, it was Zhui Liu whose testimony was taken in Hong Kong and presented. As she testified in front of Judge Marshall, she agreed to be fitted with a wire and to have her interaction videotaped. She didn't consent to any of the conduct by Thomas Powell. And the most important part of this is that Mr. Powell, in the course and scope of his employment with the United States, interfered with her right to asylum and her right to a fair adjudication of the asylum. And that interference was so profound that it delayed an adjudication of her claim for five years. The district court on ER 30 said that Powell's conduct was the actual approximate cause of the nearly eight year delay. So do we need to remand for the court to take a look at the last portion of it, the last two, three years? I don't believe so, Your Honor, because I think that the harm, if you look at the record, and the harm to Ms. Zhe Hao in the letter she wrote to then Judge Liu shows how that five year delay before the immigration proceeding started getting rolling again. And I think that overall the conclusion that, oh yes, well it took eight years for her to get asylum in that instance, would not in any way diminish the damages. And I would suggest, Your Honor, that this case has been proceeding for now 16 years. I mean from the date of the conduct of my clients, when Ms. Zhe Liu came into my office, prior to anything happening with Zhe Hao, it's been 16 years. So unless a finding of Judge Marshall is held to be clearly erroneous, I think that it would be an injustice to again remand and cause further delay. And that would include on the finding of bad faith, Your Honor. Because you would have to show, you as a panel would have to have a definite and firm conviction that somehow Judge Marshall made a mistake in the finding of bad faith. And the cases cited by the United States of America in their reply brief show that you can look at the underlying conduct of the government official, and I'm referring specifically to the case of Barry V. Bowen, you could look at the conduct of the underlying official involved in order to have that finding of bad faith. And in this instance you have, and the court didn't focus on this itself honestly, but you have Powell's conduct, which can also constitute some of that bad faith. And all of what Judge Marshall found that the totality of circumstances were in bad faith here by the United States of America. And when the United States of America argues in reply that they have to have mens rea, that there has to be a specific ill intent, as counsel argued up here, they're wrong about that. What you have to have, the standard is whether or not the United States of America proceeded in a reckless fashion, raising a frivolous argument. And the consent argument was frivolous, and it was offensive. How is the consent argument frivolous? I mean this is a difficult situation where you can't recover on the battery, but you can on the intentional infliction of emotional distress arising out of a similar incident, what happened during the operation. So at some point you've got to tease that apart. So the government post-remand took the position that, look, plaintiffs haven't shown an injury that's distinct from the solicitation as opposed to the battery. That's not inconsistent with the scope of the remand, is it? So now you're focusing not on the consent argument, but the battery versus the intentional infliction of emotional distress. I would submit, Your Honor, that the Sabau case is very instructive here, because it's not as if you have to show, in Sabau you had one meeting with a United States general where he told a family that their deceased husband and brother was a crook, was a felon, and was going to go after the brother, his doctor's license, and accuse him of wrongdoing. And the court held that those comments were defamatory. And, of course, defamation is an accepted tort under the Federal Tort Claim Act, just as battery is for purposes of our case. And what the Ninth Circuit said in Sabau is, even though those comments were defamatory, you look at the method in which they were delivered, and they were done with an intent to inflict emotional distress. And when you read the testimony of Xue Lu that's submitted as part of the record, Xue Lu says that while Mr. Powell was touching her, that he was saying, if you don't like this, I'm going to deny your green card. So you have a situation where, yes, the physical touching does set up the coercion, that's a necessary element of Civil Code 52.1, as well as, of course, distinct from that, the threat to deny the asylum, which is not exempted. So, in terms of the, if you have, under California law, and this is a case that was cited in the reply brief, the Ash case, if you have two concurrent torts acting to cause a single harm, the fact that both parties are fully liable for the harm that's caused. And when you look at the testimony of Xue Lu in this case, and of Zhe Hao, yes, in the moment, of course, no female is going to want to be touched by a strange man who has that type of power over her, and that's very deleterious. But if you look at the long-lasting harm here to each of my clients, the long-lasting harm was that he got into their apartment. How was he there? By virtue of his power as an asylum officer. What was he abusing that power as an asylum officer to approve or deny their asylum? And what was so offensive, what lasted, why the harm lasted? Well, what you're really going to is the merits, and obviously you prevailed at trial, and the record supports that. What I'm focusing on is the court's findings that the government litigated the case in bad faith, that it was vexatious, that it was wanton, it was oppressive. So one of the findings is that, look, the government persisted in an argument that's contrary to the Ninth Circuit ruling, and I'm not sure that I see that in the record where the government argued contrary to the scope of the remand. Because, Your Honor, the court did not only argue in their closing argument, I'm sorry, the Council for the United States did not only argue in their closing argument that you should somehow have less damages because of the battery. They argued that you cannot recover at all on these causes of action because battery was involved. And once the Ninth Circuit ruled in Juillet 1 that the injury from the denial of a violation of 52.1 and the intentional infliction of emotional distress was an injury distinct from the battery, making that argument was completely frivolous. They were arguing that my clients should not recover anything at all in their closing argument. And I was the trial lawyer in this case. And so that particular argument was frivolous. Now what the cases say, just because the government makes arguments that are not frivolous, okay, so maybe theoretically you could argue that there should be a discount. But why? I mean, in other words, it's a misunderstanding of basic California tort law when you look at the substantial factor test. For something to be a substantial factor, it doesn't have to be the only cause of the harm. And yet they were arguing in the face of prior precedent and clear California law that somehow they should be absolved of damages for the interference with my client's rights because there was also a battery involved. And that is offensive, Your Honor. I mean, why should the United States get a pass? Because not only did he deny them their rights to asylum and try to predicate their being granted asylum, which gets them a green card. I mean, that's their ticket to enjoy the freedoms of the United States of America. If they get that, if that asylum officer approves, it's done. They have their green card and they can stay here. Yes, there's an appeal process if there's denial, but that was so important to each of them. So why should the United States get some sort of discount or pass because Mr. Powell was also engaged in a battery at the time that he was intentionally inflicting emotional distress on these individuals and denying them their rights and violating 52.1. The answer in the California law clearly is no, you don't get a discount. If you've got two torts acting to cause a harm, each of the tort feasors are fully liable for all of the harm caused. And the cases cited in the reply brief in no way disabuse anyone of that notion. I mean, one, this is an intentional tort. So while it hasn't been, we cited the Ninth Circuit case which says that you can have an intervening factor overcoming the initial harm with an intentional tort. There may be some doubt of that in California law, but when you have an intentional tort, it has to be the intervening event has to be so far outside what is contemplated that it would be unfair to hold the initial tort feasor liable. But here, what were the harms to the clients? The harm to Ms. J. Howe, of course, was that she didn't have her asylum application adjudicated in a timely fashion and there was a delay. The harm to Ms. Jouelou was that she, all the emotional distress that she suffered. And again, you have a judge who is guided by the Jouelou I opinion, sets forth very carefully in her findings and conclusions of law the harm that each of these individuals suffered as a result of the denial of the rights under 52.1 and the intentional infliction of emotional distress. And states that the harm that she's causing relates to those violations. It's presumed, this isn't a runaway jury award, this is what happened here, it's a substantial award, but $500,000 and $700,000 for each of these individuals is not so far afield that you would say, oh, there would have to be some injury from the battery. And I would grant you this, Your Honor. The United States has never said, identified an injury that resulted from the battery that was distinct from the interference with my client's rights. This isn't a case where there was a battery and someone suffered a broken arm and you say, well, the broken arm is from the battery. Well, that didn't happen here. And without them being able to show exactly and tease that out, this is where the discount should have been, there was no basis for Judge Marshall to do so. And I think that if you look at the totality of the circumstances, Your Honor, what Judge Marshall is really looking at is, you not only have to look at the technical legal arguments that are being made by the defense, you've got to look at the totality of the circumstances of the underlying conduct of the client they represent. I mean, they're representing, through the United States of America, an individual they know is guilty of interfering with their rights to an asylum and inflicting emotional distress. He was criminally convicted. Both Zhui Liu and Zhe Hao testified in the criminal case against them. So, when you look at the totality of the circumstances, even if you could question one or two and reasonable minds might disagree on one or two of the findings of bad faith, this panel would have to have a firm conviction that Judge Marshall, who heard all the evidence, was clearly erroneous in that finding of bad faith. And I would submit to you that the case law holds that you could take strongly into account Powell's underlying, reprehensible, offensive conduct that occurred in the year 2000. And we are now 16 years later. And what the Equal Access to Justice Act does, Your Honor, is it levels the playing field for a firm like ours who litigated this case for 16 years. Was there a component of the damages that awarded fees prior to June 2000? Yes, but under the statutory minimum. The $125 an hour, there was a small amount of time that was incurred. Why was this case subject to that? Reading the case law, Your Honor, there's a different standard. In order for us to get our fees at the market rate, there would have to be a showing of bad faith. In order to get the fees under the Equal Access to Justice Act for the initial conduct at the lower level, you would just have to show that the United States took a position which was not justified. And in that instance, Your Honor, I think we can look at Powell's conduct which was prior to that June of 2008. I thought the section that she relied on didn't apply to intentional torts. Yes, she found that we were not entitled to attorney's fees under 52.1, and she found that the United States acted in bad faith. The reason why I think that you can go back, as she did to the beginning, is because Powell's conduct started in the beginning, and Powell is acting as an agent of the government, and the government is stuck with that conduct. And it was the government defending that conduct over such a long period of time in the totality of circumstances. All right. Thank you, Judge. Time has expired. Thank you. Thank you very much, Your Honor. Thank you. There are a few things I'd like to address, so I'll try and move through them quickly. Counsel began by pointing to a finding that the district court made that Howe had some anxiety before the meeting. That could not have been emotional distress that was caused by the solicitation. She may have been anxious before the meeting, but the solicitation did not happen until the meeting. And so it's totally unclear why she should be awarded damages that could not have resulted from the tortious conduct that is the basis of the claim. Second, moving to the bad faith. I'm sorry. Howe testified that her immigration attorney had told her what Powell had done to Lou, which made her fearful prior to her meeting with Powell. But that's not based on the solicitation that she received, which occurred at a later meeting. So it's not clear how it's part of the damages that she suffered as a result of her solicitation, which the district court claimed to base its award on. With respect to the bad faith, this court said that a district court can award bad faith fees for the course of a litigation if it finds that all of the fees were in some way traceable to that. Now, counsel stressed Powell's conduct forming a basis of the bad faith fees. The district court did not rely on that. The district court relied on two instances of pre-litigation conduct, neither of which involved Powell or any attorneys in the case or any person whose conduct was the subject of the claim here. So we don't think that you can trace all those fees to that conduct. And the litigation conduct that the court identified began after remand from this court. So at a maximum, you're looking at fees that were incurred after 2011 would fall within her findings of litigation bad faith. As Judge Fischer correctly pointed out, the fees based on the statutory amount, $125, those are permitted under this substantial justification prong, which expressly does not apply to cases sounding in tort, not just intentional torts, any torts. To return to the delay, as Judge Nguyen pointed out, at least several years of this delay followed the assessment by the second asylum officer, her decision to, or that asylum officer's decision to refer the case to immigration court. So that couldn't have anything to do with Powell's conduct. The district court itself and Eeyore both suspended their own proceedings. So this was not just Howe's immigration proceedings before INS that were postponed. The district court entered a stay pending resolution of the criminal case. And Eeyore also stayed its procedures at the request of all the parties, including Plaintiff Liu. So we're not sure why it should be bad faith for the INS to do something similar or specifically attributable to Powell. These are independent discretionary decisions of other government officers. And finally, I would just like to underline the points that Judge Nguyen was making with respect to the government's arguments on remand, that those were, they may have been incorrect, but they were good faith attempts to apply the line set out in the first appeal, which was decided on a motion to dismiss. We didn't have any of the actual evidence in. On a motion to dismiss, plaintiffs are entitled to all reasonable inferences. Your position was that the plaintiffs were entitled to nothing, right? Yes, because we didn't think that they had proven injury that flowed from a distinct injury. This court, the first time around, said that these could be separate and the plaintiffs were entitled to prove that, but that still leaves open the possibility that they may not have proven that things were actually separate. Counsel cites Sabau, but that was also on a motion to dismiss, and the court didn't say anything in Sabau about whether the plaintiff in that case could recover damages that flowed from the defamation or from those aspects of the case. So it's just not clear on those motion to dismiss cases exactly what happens to damages. Thank you very much. Cases just argued will be submitted.
judges: Reinhardt, Fisher, Nguyen